UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
YURI JOB,

                                Plaintiff,                        Docket No 26-cv-00569
      -against-

CITY UNIVERSITY OF NEW YORK,
RESEARCH FOUNDATION OF THE CITY
UNIVERSITY OF NEW YORK, and
JOHN and/or JANE DOE 1-10,                  **JURY TRIAL IS REQUESTED**

                              Defendants.
-------------------------------------------------------------------------**X**

## AMENDED COMPLAINT

Plaintiff, through his attorney, ALBERT VAN-LARE, ESQ., complaining of the Defendants, alleges the following:

### JURISDICTION AND VENUE

1. Jurisdiction lies in this Court pursuant to 28 USC § 1331.

2. Venue is proper in this court pursuant to 28 USC § 1391.

3. State law matters in this complaint are brought pursuant to this court's supplemental jurisdiction.

### PARTIES

4. Plaintiff, Yuri Job, is a resident of Brooklyn, New York.

5. Defendant City University of New York operates the City College of New York, where Plaintiff worked.

6. Defendant Research Foundation of the City University of New York (hereinafter referred to as "RFCUNY") is a private, not-for-profit corporation administering grant-funded programs for City University of New York.

**FACTUAL ALLEGATIONS**

7.  This action arises from a coordinated campaign of harassment, retaliation, and removal of a long-serving Black male program director who objected to sexual misconduct, procedural irregularities, and abuse of grant compliance rules and law.

8.  After more than thirty years of service, Plaintiff was sexually harassed, stripped of authority, denied a neutral complaint process, subjected to a procedurally defective investigation, and terminated.

9.  Senior administrators refused to investigate Plaintiff's harassment complaints, affirmatively empowered the alleged harasser, and dismissed Plaintiff's concerns with statements reflecting institutional disregard.

10. The termination was not based on performance. It was the culmination of retaliation.

11. Plaintiff was employed by RFCUNY for approximately thirty-five years as Director of Programs for federally funded TRiO programs.

12. Plaintiff also served as the Director of TRiO programs and authored multiple federal grant proposals over the three decades.

13. Plaintiff is a male who was employed by the Defendants until his termination by Defendants on February 1, 2023.

14. Plaintiff held the position of Director of Programs at RFCUNY.

15. Throughout his employment, Plaintiff performed his job duties competently and professionally.

16. Plaintiff had no prior disciplinary history before the Fall of 2022.

17. Plaintiff's grants generated significant funding for Defendants.

18.     Beginning in September 2022, Plaintiff raised concerns about the misuse of approximately $900,000.00 in grant funding.

19.     Plaintiff questioned timekeeping, reimbursement, and expenditure practices consistent with his responsibilities as grant director.

20.     Plaintiff also filed complaints against HR personnel and supervisory staff regarding investigatory irregularities.

21.     Plaintiff objected to procedural deficiencies in RFCUNY's investigation, including a lack of evidence disclosure and improper sharing of confidential findings in violation of defendants' rules.

22.     On or about September 14, 2022, Associate Professor Hazel Carter brushed her hand across Plaintiff's leg and moved her hands progressively up almost to the close border of Plaintiff's sexual organ during a lunch meeting at FUMO restaurant and stated that they would be "getting to know each other better".

23.     During the lunch, Carter told Plaintiff that men from his Island of Tobago are usually attractive and can perform very well. She did not describe what she meant by performance, but said men from Tobago are good lovers. She also told plaintiff that she is sure Plaintiff would like matured women.

24.     Plaintiff told Carter she did not appreciate her comments and Carter touching him. Carter did not respond. She simply smiled.

25.     Plaintiff was extremely uncomfortable. He did not explore the purpose of the meeting further. He ended the lunch meeting.

26.     After the meeting, Plaintiff purposely avoided Dr. Carter to avoid a repeat of the conduct that occurred at the lunch meeting.

27.    On or about September 20, 2022, Plaintiff met with Associate Provost Doris Cintron to report the Carter incident and how he is uncomfortable working with Dr. Carter.

28.    Plaintiff also met with Candice Saxon about filing a complaint regarding the violations of grant directives by the college.

29.    On or about October 19, 2022, Plaintiff received an email from Mohammad Elayan that a complaint from Natasha Joseph, an employee of the TRiO Talent Search program.

30.    On or about the same day, Plaintiff saw an email from Ms. Joseph and scheduled a meeting via Zoom to address her complaints followed by an in-person meeting on or about October 24, 2022.

31.    During this meeting with Ms. Joseph and after addressing her questions and concerns, Ms. Joseph admitted that all of her claims were unsubstantiated and submitted a formal resignation, which Plaintiff accepted.

32.    Soon after Ms. Joseph's complaint, a student, Karen Gutierrez, filed a similar complaint after Plaintiff denied her request to be made Associate Director. Plaintiff assessed her knowledge and skills and determined she could not meet the expectations of the position, and instead made her a supervisor where she was more qualified.

33.    Plaintiff provided each of his team members (which Shortly after Ms. Joseph's complaint, a student named Karen Gutierrez submitted a similar grievance following the Plaintiff's refusal to promote her to the position of Associate Director. The Plaintiff evaluated her knowledge and skills and concluded that she did not meet the requirements of the role; consequently, she was appointed as a supervisor, a position for which she was more suitably qualified. comprised of supervisors) a formal job description.

34.     When Ms. Gutierrez received her job description, she became upset and filed her complaint against Plaintiff.

35.     On or about December 2, 2022, Plaintiff sent an email to Mr. Mohammad Elayan, asserting his denial of all allegations made by Ms. Joseph and informing him that her complaint was false.

36.     On or about December 5, 2022, Mr. Elayan responded to Plaintiff requesting to meet with him.

37.     Plaintiff met with Mr. Elayan on December 6, 2022.

38.     At the December 6, 2022, meeting, Plaintiff was not made aware that an investigation was being conducted into allegations concerning him. He only learned from Mr. Elayan that formal complaints were lodged against Plaintiff by Ms. Joseph and Ms. Gutierrez.

39.     On December 15, 2022, after receiving an email from Professor Hazel Carter, Plaintiff met with Chris Yawn to discuss Professor Carter's conduct and stated intentions.

40.     During that meeting, Mr. Yawn informed Plaintiff that Professor Carter had a reputation for removing Black men from their positions and advised Plaintiff to "watch your back."

41.     This warning placed Plaintiff on notice of a potential  discriminatory pattern.

42.     Plaintiff is a Black and male.

43.     On December 19, 2022, Plaintiff sent Mr. Yawn a draft email concerning Professor Carter's potential role in the TRIO programs.

44.     That same day, Plaintiff emailed Professor Carter requesting that a previously scheduled meeting be postponed pending consultation with RFCUNY regarding compliance issues.

45.     In that email, Plaintiff sought her assistance in outlining support for mentoring initiatives, students' social and emotional needs, funding for visits, and laboratory access.

46.     Plaintiff's communications were professional and compliance-focused

47.    Rather than investigate, Defendants promoted Professor Carter to Plaintiff's supervisor and Principal Investigator on December 28, 2022.

48.    Plaintiff was uncomfortable with the appointment of Carter as his supervisor given his pending complaint against her for sexual misconduct.

49.    Plaintiff was later required to attend a meeting which he was forced to sit face-to-face with Carter, the individual he accused of harassment.

50.    Plaintiff's authority over grant administration was stripped.

51.    Plaintiff was required to route all approvals through new oversight structures controlled by Carter that did not previously exist.

52.    These changes in functions for Plaintiff were materially adverse and functioned as a demotion in assignment and role for Plaintiff.

53.    The reassignment occurred after Plaintiff complained about Dr. Carter and after he raised financial compliance concerns about doubtful financial practices by the two defendants.

54.    The temporal proximity establishes a causal connection that established retaliatory conduct by defendants acting together to reduce Plaintiff's functions given the relationship between his employer the CUNY Foundation and Professor Carter, an employee and representative of CUNY.

55.    This conduct by the defendants were  severe and pervasive and altered the terms and conditions of Plaintiff's employment.

56.    After Plaintiff raised concerns, Defendants began receiving complaints  that were engineered by Professor Carter , from subordinates leading to investigations against Plaintiff that were retaliatory in nature. Plaintiff was informed by other employees that Carter was the catalyst for these investigations that she orchestrated.

57. Plaintiff disputes the allegations of falsified timesheets and aggressive conduct and denied wrongdoings that were alleged by these orchestrated complaints.

58. The investigation findings in these orchestrated were issued without affording Plaintiff adequate procedural protections required under RFCUNY policy.

59. During the investigation of Plaintiff, Defendants, acting jointly, relied on isolated, out-of-context audio clip to characterize Plaintiff as "aggressive."

60. Plaintiff was not given a meaningful opportunity to challenge the authenticity, context, or completeness of the accusations against him.

61. The investigation findings were circulated before Plaintiff could respond.

62. Defendants ignored their own Complaint Policy procedures requiring fair and confidential investigation practices.

63. When Plaintiff challenged inaccuracies in the investigation, he was characterized as "defensive," " insubordinate,"  and resistant.

64. The timing of the investigation, immediately following Plaintiff's protected complaints, demonstrates a retaliatory motive.

65. Plaintiff was effectively demoted when Professor Carter was named Principal Investigator and supervisor over Plaintiff after he had complained about her sexually inappropriate behavior.

66. On January 4, 2023, Plaintiff attended a virtual meeting he had requested with RFCUNY.

67. Upon joining, Plaintiff discovered that Professor Carter — the individual he had accused of harassment — was already engaged in discussion with HR Director Annette Piecora.

68.  Plaintiff had not been informed that Carter would attend.

69. As a result of the unexpected presence of the alleged harasser, Plaintiff experienced acute emotional distress and suffered a panic attack.

70. Plaintiff objected to Carter's presence, citing confidentiality concerns and his inability to speak freely regarding harassment, especially as Carter, the harasser, was present.

71. Ms. Piecora responded condescendingly, stating it was customary to have a supervisor present even where the supervisor was accused of something.

72. Plaintiff objected that such practice appeared inconsistent with RFCUNY Policy 510 and standard HR protocols.

73. Plaintiff had not been formally notified that Carter was his supervisor, although she assumed all the responsibilities of his supervisor.

74. During the meeting, Ms. Piecora posed leading questions designed to confuse and embarrass Plaintiff.

75. Piecora refused to hear Plaintiff's complaint and stated she believed Plaintiff to be a "bad supervisor."

76. Defendants' actions were retaliatory and calculated to discourage Plaintiff from pursuing his accusations against Carter and the defendants for their harassment against him  because he complained about the abuse of grant funds.

77. The combined effect of Carter's presence, Piecora's tone, and refusal to hear the complaint created an intimidating environment calculated to discourage Plaintiff from complaining about his harassment and retaliation.

78. Plaintiff ended the meeting prematurely, feeling bullied, discouraged and attacked.

79. On or about January 13, 2023, just prior to his termination on February 1, 2023, Plaintiff met with the HR Director and Assistant Director to express the fact that Dr. Carter and Karen Gutierrez, a student, colluded and made bogus claims to inflate their claims.

80. These complaints made by Dr. Carter and Ms. Guiterrez were in retaliation for the actions and events Plaintiff previously engaged in, including but not limited to the questioning of the misuse of grant funds.

81. On February 1, 2023, Plaintiff was terminated from his employment.

82. Within the termination letter, it misidentified Plaintiff's job title.

83. Plaintiff's termination was retaliatory in nature and pretextual.

84. Although Plaintiff employer is the foundation, CUNY and the Foundation worked together as joint employer.

85. Carter the harasser was employed by the CUNY as was also the supervisor of the Plaintiff in his grant program when it was transferred to The Department of Education at CUNY, City College.

86. The Defendants together administered the grant program where Plaintiff worked and Defendants jointly appointed Carter to supervise Plaintiff knowing fully well that she had harassed the Plaintiff,

87. The Plaintiff worked for the foundation and his work and his grant were for the benefit of defendant CUNY with whom he worked closely and received operational instructions for his job.

88. The defendants based on the facts in the proceeding paragraphs were joint employers for the Plaintiff.

89. The plaintiff worked 360 hours of unpaid overtime in his last two years working with defendants.

90. The overtime hours were accrued based on the defendants compelling the plaintiff to work on renewing the grants that provided resources to the defendants. Because Plaintiff cannot spend time paid for by the grant to write and develop renewal process for the same grant he was

compelled to work on grant renewal after his regular work with knowledge and concurrence of the defendants.

91.    The Plaintiff has not been paid for the overtime worked although he requested payments.

<u>AS AND FOR A FIRST CAUSE OF ACTION</u>

92.    The foregoing paragraphs are realleged as if set forth herein verbatim and incorporated by reference.

93.    Defendant violated plaintiff's rights under Article 15 of the New York Executive Law, New York Executive Law Section 296, by engaging in unlawful discriminatory practices because of his race, engaging in retaliation, and creating a hostile work environment.

94.    Defendant engaged in sex discrimination and retaliation against Plaintiff.

95.    Defendant created a hostile work environment for Plaintiff.

<u>AS AND FOR A SECOND CAUSE OF ACTION</u>

96.    The foregoing paragraphs are realleged as if set forth herein verbatim and incorporated by reference.

97.    Plaintiff was subjected to unwelcome sexual conduct by his  supervisor, Professor Carter.

98.    Defendants' failed to properly investigate and instead elevated the alleged harasser to supervisory authority.

99.    The conduct was sufficiently severe and pervasive to create a hostile work environment under state and city anti-discrimination laws.

<u>AS AND FOR A THIRD CAUSE OF ACTION</u>

100.    The foregoing paragraphs are realleged as if set forth herein verbatim and incorporated by reference.

101.   Plaintiff was damaged by Defendants' actions that denied him equal terms and conditions of employment as set forth above, in violation of section 8-107.1 of the Administrative Code of the City of New York.

102.   Defendant violated section 8-107.1 of the Administrative Code of the City of New York by denying Plaintiff equal terms and conditions of employment because of his sex; engaged in retaliation; and created a hostile work environment.

## AS AND FOR A FOURTH CAUSE OF ACTION

103.   The foregoing paragraphs are realleged as if set forth herein verbatim and incorporated by reference.

104.   Plaintiff engaged in protected activity when he reported Dr. Carter's conduct.

105.   Plaintiff also engaged in protected activity by raising ethical concerns about the misuse of grant funds.

106.   Shortly after these complaints, Plaintiff was subjected to retaliatory conduct, including being demoted in his position, allowing Dr. Carter to be his supervisor, and failing to investigate Plaintiff's claims against Dr. Carter. Defendant engaged in retaliation on these bases and created a hostile work environment.

107.   Defendants collaborated to suppress Plaintiff's reports and prevent an investigation, in violation of internal policies and protections as a victim.

108.   Ultimately, Plaintiff's employment was terminated without cause and without severance, in retaliation for his protected whistleblower and discrimination complaints.

109.   Defendants' retaliatory acts were intentional, malicious, and in violation of the New York State Human Rights Law (N.Y. Exec. Law §296), and the New York City Human Rights Law (N.Y.C. Admin. Code §8-107).

110.    Plaintiff's termination was carried out in retaliation for his reporting Dr. Carter's conduct and potential financial improprieties.

111.    Such termination violated the public policy of the State of New York, defendant's policy which protects employees who report unlawful discrimination and misconduct.

112.    As a result, Plaintiff has suffered lost wages, emotional distress, and reputational harm.

<u>AS AND FOR A FIFTH CAUSE OF ACTION</u>

113.    Defendants knew or should have known of Dr. Carter's discriminatory and unprofessional conduct.

114.    Despite actual notice of such conduct through Plaintiff's oral and written complaints. Defendants failed to investigate, discipline, or remove Dr. Carter from her position of authority.

115.    Defendants failure to take reasonable steps to prevent or correct the discrimination and retaliation constitutes negligent supervision and retention under New York law.

<u>AS AND FOR A SIXTH CAUSE OF ACTION</u>

116.    The defendants failed to pay Plaintiff overtime for overtime worked in the amount of 360 hours.

117.    Defendants violated FLSA, a federal law and New York Labor law

118.    Defendants violated Plaintiff's rights under Federal overtime laws and under New York State, and New York City labor regulations.

119.    Plaintiff invokes 42 USC 1983 as a basis to enforce violation of his federal and constitutional rights,

120.    The defendants violated Plaintiff's rights under the Equal Protection Clause of the 14th Amendment.

'

## RELEIEF

WHEREFORE, Plaintiff demands the following relief, jointly and severally against the

Defendant or as otherwise stated:

a.        A Declaratory judgment that the conduct, practices, and acts complained of herein are

discriminatory and illegal.

b.        A Declaratory judgment that the plaintiff was discriminated against and subjected to

retaliation because of his sex.

c.        An order granting damages totaling $10,000.000.00 or the amount to be proven at trial. ,

d.        An Order granting punitive damages against defendant.

e.        An Order by the Court taxing the costs of this action against Defendants, including

Plaintiff's attorney's fees incurred in the prosecution of this case.

f.        Any and all further relief in law and equity deemed necessary by the Court.


Dated:  New York, New York
 March 2, 2026

                                              Respectfully submitted,

                                              *Albert Van-Lare*

                                    By:_____
                                    Albert Van-Lare, Esq.
                                    125 Maiden Lane, Suite 510
                                    New York, New York 10038
                                    (212) 608-1400
                                    *Attorney for Plaintiff*